UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22591-CIV-HUCK/SIMONTON

ABILIO ALVAREZ,                          )
                                         )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )
                                         )
KEY TRANSPORTATION SERVICE               )
CORP., a Florida Corporation, and ORLIE  )
JEDWAB, individually,                    )
                                         )
            Defendants.                  )
                                         )

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendants, KEY TRANSPORTATION SERVICE CORP. and ORLIE JEDWAB (hereafter collectively referred to as "KTSC" or "Defendants"), by and through their undersigned counsel, and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 7.5 of the United States District Court for the Southern District of Florida, hereby file their Motion for Summary Judgment and Incorporated Memorandum of Law as to Plaintiff's claim of failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA").

## PRELIMINARY STATEMENT

Plaintiff brings this action claiming he is entitled to more than $25,000 in unpaid overtime compensation and liquidated damages for the period of October 2, 2004 through his termination on August 27, 2007 (155 weeks).[1]  The undisputed facts and evidence demonstrate that Plaintiff was paid all compensation to which he was entitled, including overtime

---

[1] Plaintiff admits he received compensation for the hours he worked in excess of 40 hours in a work week, but he claims he was paid straight time instead of time and one half of his hourly rate.  Accordingly, Plaintiff limits his claim to half-time compensation for all hours worked in excess of 40 hours.

compensation.  Additionally, Plaintiff admitted during his deposition that:  (1) he never worked more than forty-hours in a work week between September 2005 and September 2006 (52 weeks); (2) he did not work for KTSC at all between July 2006 and September 2006; (3) he was paid overtime compensation at a rate of time and one-half between July 17, 2007 and August 27, 2007 (6 weeks); and (4) he was employed as an exempt employee between October 9, 2006 and June 25, 2007 (37 weeks).

Plaintiff claims that during the remaining 60 weeks at issue, KTSC had a policy that required its employees to handwrite their overtime hours on a sticky note instead of punching in and out with the Company time clock.  Plaintiff claims that employees were instructed not to allow their time cards to reflect more than 40 hours worked in a workweek. Plaintiff further claims that he and all other employees who worked more than 40 hours were paid cash for the overtime hours at a straight time rate instead of time and one-half of their hourly rate.  Finally, Plaintiff claims that the Company only began allowing its employees to report overtime hours on their time cards and paying its employees overtime compensation at one and one-half times their hourly rate after July 17, 2007.  However, Plaintiff's pay stubs and time cards for periods prior to July 17, 2007, as well as the time cards and paystubs for other KTSC employees, demonstrate that Plaintiff and his co-workers did report their overtime hours on their time cards prior to July 17, 2007 and were paid overtime compensation at one and one half times their hourly rate.

Additionally, Plaintiff claims he should not have been classified as an exempt employee while he was working as a Night Dispatch Manager.  However, Plaintiff's deposition testimony demonstrates that Plaintiff was properly classified as exempt from the overtime

provisions of the FLSA during this period by virtue of the administrative and executive exemptions.

## STATEMENT OF UNDISPUTED FACTS[2]

1.      KTSC is a family owned business that has provided chauffeured ground transportation services in the South Florida area since 1999.  (Reinhard Aff. ¶ 3)

2.      Plaintiff began his employment with KTSC as a Dispatcher on or about December 20, 2004.  (Pl. Dep. 10:18-21; Reinhard Aff. ¶ 4)

3.      As a Dispatcher, Plaintiff was responsible for assigning KTSC's drivers to transport KTSC's clients to destinations and for coordinating KTSC's clients' transportation needs.  (Pl. Dep. at 14:15-15:16)

4.      Plaintiff earned an hourly rate of $10.00 per hour as a Dispatcher.  (Pl. Dep. at 45:24-46:1)  His hourly rate was raised to $11.50 per hour on or about July 25, 2005. (Id. at 46:6-7; Reinhard Aff. ¶ 5).

5.      As an hourly, non-exempt employee, Plaintiff was required to create a record of his hours worked by punching in and out of the Company's time clock using a company issued time card.  (Pl. Dep. at 19:20-20:19; Reinhard Aff. ¶ 6)

6.      KTSC requires all of its hourly, non-exempt employees to punch in and out with the Company's time clock when they arrive to and leave from work.  An employee's failure to accurately report his time, including overtime hours worked, is a violation of Company policy.  (Reinhard Aff. ¶ 6)

7.      Plaintiff was counseled and disciplined a number of times for failing to punch in or punch out on a work day while employed as an hourly, non-exempt employee.  (Pl.

---

[2] The undisputed facts are supported by the deposition transcript of Plaintiff, Abilio Alvarez ("Pl. Dep.") and the Affidavit of Kim Reinhard ("Reinhard Aff.") filed concurrently herewith.

Dep. at 46:12-48:23 and Exh. 3 thereto)  He often forgot to punch in and he often forgot to punch out.  (Pl. Dep. 59:13-60:5)

        8.     Plaintiff admits that most of the time he only worked eight-hour days.  (Pl. Dep. at 19:13-18)

        9.     Between September 2005 and September 2006, Plaintiff worked at KTSC on a part-time basis and held a full-time job at a car rental company.  (Pl. Dep. 76:1-12, 25-77:2)  During this year, Plaintiff worked less than 40 hours every work week.  (Id. at 76:15-22; 80:9-14)

        10.    Plaintiff was more competent, reliable, dependable, experienced, and committed to KTSC than any other employee.  (Pl. Dep. 58:6-17).  Plaintiff followed procedures better than other employees and he had the Company's best interests in mind.  (Id. at 58:18-23)  Accordingly, Plaintiff was promoted to the position of Night Dispatch Manager on or about October 9, 2006.  (See Reinhard Aff. ¶ 11)

        11.    As Night Dispatch Manager, Plaintiff was paid a salary of $650 per week regardless of the number of hours he worked.  (Pl. Dep. 39:3-14)  He supervised and was responsible for overseeing the work of three to four night dispatchers.  (Id. at 36:7-18)  Plaintiff also was responsible for (1) ensuring that the drivers were dispatched on their assigned jobs and that they arrived on time for clients; (2) monitoring traffic, weather and airport flight arrival delays; (3) providing excellent interaction with clients, airport representatives and drivers; (4) updating the trip log with any irregularities for recordkeeping purposes; (5) reporting to the owner and other people in upper management regarding vehicle breakdowns; (6) making arrangements for assistance to alleviate any driver or client problems; (7) enforcing Company policies and procedures on the night shift; and (8) ensuring the operation was locked up, that the

windows and doors were closed, and that the iron bars were in place at the end of work hours. (Pl. Dep. at 40:20-41:25; 43:6-44:18)

12.     Plaintiff did whatever he needed to do as a Manager for the Company. (Pl. Dep. 58:24-59:1)  To this end, Plaintiff also prepared and circulated memoranda regarding Company policies and procedures.  (Reinhard Aff. ¶ 15 and Exh. "E" thereto)

13.     If Plaintiff had problems with any of the dispatchers who worked under him, he would report those problems to the Office Manager, Nikki Williams.  (Pl. Dep. at 38:1-39:2)

14.     Plaintiff used his own independent judgment and discretion when performing work for KTSC, such as assigning work to drivers, dispatching drivers when a call would come in, making sure everyone who worked the day shift had their assignments for the following morning, ensuring the drivers had special items requested by customers, such as the *New York Times*, fixing computers, taking care of the dogs, washing the company vehicles, and communicating with companies such as American Express, Xerox and TMC management to coordinate transportation services for large groups.  (Pl. Dep. 14-15)

15.     As Night Dispatch Manager, Plaintiff was the only manager on duty during the night shift and the only person in charge of the evening operations of KTSC. (Pl. Dep. at 35:19-23; 44:10-18).

16.     According to Plaintiff, his most significant achievement at KTSC was disciplining the drivers.  (Pl. Dep. 13:7-10)

17.     On June 25, 2007, Plaintiff was demoted to an hourly, non-exempt dispatcher because of performance issues.  (See Reinhard Aff. ¶ 13)

CASE NO. 07-22591-CIV-HUCK/SIMONTON

18.     Plaintiff was terminated on August 27, 2007 after he made derogatory, racial slurs towards others in the office. (Reinhard Aff. ¶ 14 and Exh. "D" thereto)

## ARGUMENT AND CITATION OF AUTHORITIES
### SUMMARY JUDGMENT STANDARD

The Supreme Court of the United States has unequivocally endorsed the right of a trial judge to grant summary judgment.   Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Rejecting limits on the granting of summary judgment, the Court held that summary judgment is not a "disfavored procedural shortcut," but is an important part of the Federal Rules of Civil Procedure.   Celotex Corp., 477 U.S. at 327.   It is the non-moving party's obligation to come forward with some specific facts, not mere allegations, which show that there is a genuine issue of material fact, and summary judgment is proper if the non-moving party fails to present this requisite showing.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co.  v. Zenith Radio Corp., 475 U.S. 574 (1986); Grigsby v. Reynold's Metals Co., 821 F.2d 590, 597 (11th Cir. 1987).

### STANDARD UNDER THE FLSA

The FLSA provides that:

> No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. §207(a).  The FLSA exempts from the above requirement those employees employed in a bona fide "administrative" capacity.  29 U.S.C. §213(a)(1).  The employer bears the burden of establishing whether an employee fits within the exemption. See Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974); Reich v. John Alden Ins. Co., 126 F.3d 1 (1st Cir. 1997); Piscione v. Ernst & Young, L.L.P., 171 F.3d 527 (7th Cir. 1999).

As shown below, KTSC required its employees to reflect all hours worked on their time cards, including overtime hours. As also shown below, KTSC compensated its employees at a rate of one and one half times their hourly rate for all hours they worked in excess of 40 hours in a work week. Finally, as shown below, KTSC has established that Plaintiff was exempted from the overtime provisions of the FLSA by virtue of the administrative and executive exemptions during a portion of the time he was employed by KTSC.

## POINT I

**PLAINTIFF WAS EMPLOYED IN AN "ADMINISTRATIVE" CAPACITY UNDER THE FLSA FOR THE PERIOD HE WAS EMPLOYED AS NIGHT DISPATCH MANAGER AND IS NOT ENTITLED TO OVERTIME COMPENSATION**

**A.  Standard for Determining Whether an Employee is Employed in an Administrative Capacity**

Plaintiff was exempt under the administrative exemption of the FLSA during the time he was employed as a Night Dispatch Manager, from October 9, 2006 until June 25, 2007. In order to show that an employee was employed in an administrative capacity, an employee (1) must have earned a minimum of $455 weekly salary; and (2) his primary duty consisted of the performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's clients, which includes work requiring exercise of discretion and judgment. See 29 C.F.R. §541.200.

**B.  Plaintiff's "Primary Duty" Was Administrative**

Federal courts analyzing whether dispatchers are exempt from the overtime provisions of the FLSA have found that employees who performed work similar to that of Plaintiff sufficiently performed work directly related to the general business operations to qualify for the administrative exemption. See, e.g., Lapoint v. CRST Int'l, Inc., 2004 U.S. Dist. LEXIS 26584 (N.D. Ia.  June 16, 2004) (granting summary judgment in defendant's favor finding

dispatcher manager exempt from the FLSA by administrative exemption); Harrison v. Preston Trucking Co., 201 F. Supp. 654 (D. Md. 1962) (granting summary judgment for the defendant finding general duties of dispatching exempt from FLSA and finding mere fact that some functions may be non-exempt is immaterial to exemption determination); Mitchell v. Branch Motor Express Co., 168 F. Supp. 72 (E.D. P.a. 1958) (finding dispatchers "carry out major assignments in conducting the operation of the business" and that "their work affects business operations to a substantial degree"); McComb v. New York & New Burnswick Auto Exp. Co., 95 F. Supp. 636 (D.N.J. 1950).  Each of these cases, with the exception of Lapoint, found the plaintiff dispatchers exempt from the FLSA's overtime provisions.  In the instant case, the Plaintiff was not merely a dispatcher – he was the Dispatch Manager.

In Lapoint, 2004 U.S. Dist. LEXIS 26584 (N.D. Ia.  June 16, 2004), the court found that the plaintiff, a fleetmanager/dispatcher whose job duties included instructing and assigning drivers work without supervision, disciplining employees, listening to driver concerns and solving problems, assuring customer service objectives, interacting with terminal and coordinate personnel needs, answering phone inquiries from drivers regarding discipline and equipment policies, monitoring drivers' leave time and duration of out of service vehicles," performed work "directly related to the general business operations of [the employer]."  Id. at *28-29.  While the plaintiff claimed he was only one of several dispatchers that "kept things running until the day shift came in," the court found that "the fact [plaintiff] was in charge during his work hours . . . only lends support to a determination that he exercised discretion and independent judgment."  Id.

Similarly, in the instant case, Plaintiff's duties were directly related to KTSC's general business operations.  Plaintiff was in charge of overseeing all of KTSC's evening

operations and dispatch functions.  (Pl. Dep. 40:13-18)  Plaintiff also was responsible for enforcing company policies and procedures, ensuring that the drivers were dispatched on their assigned jobs,  ensuring that the drivers arrived on time for clients, monitoring traffic, weather and airport flight arrival delays, providing excellent interaction and customer service to clients, airport representatives and drivers, making arrangements for assistance to alleviate any driver or client problems; and ensuring the operation was locked up, that the windows and doors were closed, and that the iron bars were in place at the end of work hours.  (Pl. Dep. at 40:20-41:25; 43:6-44:18)  Additionally, Plaintiff had the authority and used his independent judgment and discretion to discipline drivers.  (Pl. Dep. at 13:7-10)

Plaintiff also used his own independent judgment and discretion when performing work such as assigning work to drivers, dispatching drivers when a call would come in, making sure the drivers who worked the day shift had their assignments for the following morning, ensuring the drivers had special items requested by customers, such as the *New York Times* and other newspapers, and coordinating transportation services for large client groups such as American Express and Xerox transportation.  (Pl. Dep. 14-15)  Plaintiff admits he did whatever he needed to do as a Manager for the Company.  (Pl. Dep. 58:24-59:1)

For all of the above reasons, Plaintiff was exempt from the overtime requirements of the FLSA during the time he was employed as Dispatch Manager by virtue of the administrative exemption.

## POINT II

**PLAINTIFF WAS EMPLOYED IN AN "EXECUTIVE" CAPACITY UNDER THE FLSA FOR THE PERIOD HE WAS EMPLOYED AS NIGHT DISPATCH MANAGER AND IS NOT ENTITLED TO OVERTIME COMPENSATION**

**A.     Standard for Determining Whether an Employee is an "Executive"**

In order to show that an employee is a bona fide executive, an employer must show: (1) the employee earned a salary of at least $455.00 per week; (2) his "primary duty" is management . . .; (3) he "customarily and regularly directs the work of two or more other employees;" and (4) his suggestions and recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.  29 C.F.R. §541.100(a).

It is undisputed that Plaintiff earned a fixed weekly salary of  $650.00, well in excess of the $455.00 threshold. (Pl. Dep. at 39:3-14)  There also is no dispute that Plaintiff "regularly and customarily directed the work of at least two employees."  (<u>Id.</u> at 36:7-18) Finally, there is no dispute that 50% of Plaintiff's "primary duty" was "management."  (<u>Id.</u> at 35:19-23; 40:20-41:25; 43:6-44:18)

The regulations shed light on the terms "primary duty" and "management." Pursuant to 29 C.F.R. § 541.102, "management" is described as:

> . . . [i]nterviewing, selecting, and training of employees, setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. 541.700, which addresses the term "primary duty," provides:

> [d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.  Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as

compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend over 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

In the instant case, the nature of Plaintiff's managerial responsibilities establishes that management was at least 50% of his "primary duty" within the meaning of the regulations. For one, KTSC's organizational structure purposefully gave Plaintiff, as the Night Dispatch Manager, exclusive responsibility over the evening operations of its office. At KTSC, Plaintiff was often the only management-level employee who worked at the office in the evenings. (Pl. Dep. At 43-44) There was often no office manager, no assistant manager, no on-site human resources representatives, and no on-site higher level manager. Other than Plaintiff, KTSC's evening staff often consisted entirely of non-exempt, hourly paid, non-managerial, employees. As such, Plaintiff was often the only employee at the office who had the authority to manage the office's evening operations, including enforcing company policies and procedures, assigning drivers work, ensuring that the drivers were dispatched on their assigned jobs,  ensuring that the drivers arrived on time for clients, disciplining drivers, monitoring traffic, weather and airport flight arrival delays, providing excellent interaction and customer service to clients, airport representatives and drivers, making arrangements for assistance to alleviate any driver or client problems, ensuring the operation was locked up, that the windows and doors were closed, and that the iron bars were in place at the end of work hours and so forth.  (Pl. Dep. at 13:7-10;

CASE NO. 07-22591-CIV-HUCK/SIMONTON

40:20-41:25; 43:6-44:18)  Thus, the undisputed evidence establishes that at least 50% Plaintiff's principal responsibility, or "primary duty," was "management" within the meaning of the FLSA and the applicable regulations.

Despite the parties' agreement that Plaintiff's job would consist of the above duties and to oversee all aspects of the office, Plaintiff now contends that he should have nonetheless been classified as a non-exempt employee.  Plaintiff's contention has no merit.

### 1.      The Relative Importance of Managerial Duties

Even if Plaintiff did dispute that 50% of his primary duty consisted of management, federal courts routinely have concluded that managerial employees who spend less than 50 percent of their time in managerial activities nevertheless were exempt from the overtime provisions of the FLSA because the importance of their management functions was such that the amount of time spent on the non-exempt tasks was of little or no consequence.  The seminal cases on this issue were decided by the First and Second Circuit Court of Appeals in Donovan v. Burger King Corp., 672 F.2d 221 (1st Cir. 1982) ("Burger King I") and Donovan v. Burger King Corp., 675 F.2d 516 (2d Cir. 1982) ("Burger King II").

Federal courts within the Eleventh Circuit also have held that employees were exempt under the short test regardless of the amount of time spent performing nonexempt work. See Debrecht, Bell and Jackson v. Osceola County, 243 F. Supp. 2d 1364 (M.D. Fla. 2003) (battalion chiefs of emergency services department satisfied the short test despite chiefs claims that they spent *85 percent* of their time performing nonexempt work, where they supervised day-to-day operations of personnel, prepared performance evaluations, and made strategic decisions regarding the allocation of personnel during emergency operations); Thomas v. Jones Restaurants, Inc., 64 F. Supp. 2d 1205 (N.D. Ala. 1999) (fast food restaurant manager satisfied

short test despite the fact she often performed nonexempt work when the crew ran behind, where evidence revealed management was her primary duty.)    Several other federal courts have followed suit. See Terri Jones v. Virginia Oil Co., Inc., 2003 U.S. App. LEXIS 14675 (4th Cir. 2003) (employee still qualified for executive exemption under short test even though she claimed to spend between *75 and 80 percent* of their time of her time performing nonexempt work where it was shown management was her primary duty); Baldwin v. Trailer Inns Inc., 7 WH Cases2d 449, 455 (9th Cir. 2001) (finding that the relative importance of the managerial duties compared to the nonexempt duties supported the exemption – the managers, although claiming to have spent *90 percent* on nonexempt work, "were in charge of making the relatively important day-to-day decisions of the facility and providing for the safety of those in the property"); Murray v. Stuckey's, 939 F.2d 614, 618-20 (8th Cir. 1991) (manager met the primary duty test despite the fact that *65 to 90 percent* of the manager's time was spent on non-managerial tasks); Roberts v. National Autotech, Inc., 192 F. Supp. 2d 672, 679 (N.D. Tex. 2002) (finding that the store manager of a garage was exempt even though he spent the majority of his time performing nonexempt duties, such as answering phones, driving clients to and from work, getting parts, and cleaning the bathroom, because his primary importance was as manager of the store); Kastor v. Sam's Wholesale Club, 131 F. Supp. 2d 862, 867 (N.D. Tex. 2001) (ruling that the manager of the bakery department who claimed to spend *90 percent* of his time performing non-managerial tasks was not entitled to overtime because the purpose of his employment was to manage the department in accordance with the company's policies and procedures); Meyer v. Worsley Cos., Inc., 2 WH Cases2d 435, 439 (E.D. N.C. 1994) (granting summary judgment for the employer where the employee considered himself to be "responsible" for the store and was "in charge" of the daily operations, even though  the store manager was expected to do all the duties of any

other store clerk, plus all the duties exclusively assigned to him as manager); Sturm v. Toc Retail, Inc., 2 WH Cases2d 628 (M.D. Ga. 1994) (granting summary judgment for the employer after finding that the demands of the store "made it necessary" for managers to perform exempt and nonexempt work "simultaneously"); see also Baldwin, supra, 7 WH Cases2d at 455 ("we do not presume that the executive exemption fails merely because the proportion of time spent on exempt managerial tasks is less than fifty percent, where, as here, managerial duties are packaged in employment with non-managerial tasks, and the management function cannot readily and economically be separated from the nonexempt tasks"); Donovan, 25 WH Cases at 431 ("one can still be 'managing' if one is in charge, even while physically doing something else").

   In the instant case, the importance of Plaintiff's managerial duties supports a finding that Plaintiff's primary duty was management.  Assuming that Plaintiff performed a significant amount of non-exempt work, it is undisputed that Plaintiff's managerial duties were so important to KTSC that they far exceed in importance any non-exempt work Plaintiff may have performed.  In sum, the importance of Plaintiff's managerial duties as compared with other types of duties establishes that his primary duty was management.

   **2.** **Frequency With Which Plaintiff Exercised Discretionary Powers and Relative Freedom From Supervision**

   Another factor to be considered in determining whether Plaintiff's primary duty was management is the frequency with which he exercised discretionary powers and relative freedom from supervision.  An analysis of this factor, like the analysis of the relative importance of his managerial duties, also supports a finding that Plaintiff's primary duty was management.

   In Murray v. Stuckey's, Inc., 30 WH Cases 705 (8th Cir. 1991), the district court held that managers who spent 65-90% of their time on non-managerial duties were non-exempt,

largely because they were closely supervised by regional managers.  Id. at 707.  The Eighth Circuit reversed the district court's judgment, finding, among other things, that the percentage of nonexempt work was not a controlling factor under the regulations. Id. at 708.  Moreover, the Court found that although regional managers actively supervised the store managers by traveling to each store from time to time and communicating by phone with store managers at least weekly to monitor compliance with the company's standardized methods of operation, "the local store manager's job [was not] any less managerial for FLSA purposes simply because he or she has an active regional manager boss."  In that regard, the Court stated, "we believe that the manager of a local store in a modern multi-store organization has management as his or her primary duty even though the discretion usually associated with management may be limited by the company's desire for standardization and uniformity." Id.; see also Donovan, 25 WH Cases at 431 (citing Anderson v. Federal Cartridge Corp., 62 F. Supp. 775, 781 (D. Minn. 1945) (ensuring that company policies are carried out constitutes the "very essence of supervisory work")).

In the instant case, the supervision over Plaintiff was less stringent than the supervision exerted over the manager in Murray, who was found to be exempt from the FLSA's overtime provisions.  Plaintiff often had no supervision in the evenings.  Plaintiff was free to exercise discretion and make decisions regarding the evening operations of the company and decisions affecting the office on the night shift.  In fact, Plaintiff's ability to assign driver's work, make decisions to alleviate client and driver problems, and to discipline drivers all indicate that Plaintiff was free to manage the office in the evenings without close supervision.  Thus, application of the second regulatory factor also establishes that Plaintiff's primary duty was management because Plaintiff was relatively free from supervision and empowered to exercise discretion when it came to managing the evening operations of KTSC's office.

CASE NO. 07-22591-CIV-HUCK/SIMONTON

### 3.      <u>Relationship Between Salary and Wages</u>

The last factor in determining whether Plaintiff's "primary duty" was managerial is the relationship between his salary and the wages paid other employees for the nonexempt work Plaintiff performed.  While there is no exact formula under which courts will find that an employee's salary is sufficiently higher than the wages of nonexempt employees to support the exemption, courts have found a sufficient ratio where:

- The manager made at least $250 more a month than the assistant manager and was eligible for a bonus the assistant was not eligible for.  <u>Baldwin</u>, 7 WH Cases2d at 456.
- The manager made twice as much as the hourly employees. <u>Haines v. Southern Retailers, Inc.</u>, 3 WH Cases2d 872, 879 (E.D. Va. 1996).

In the case at hand, Plaintiff was paid a salary of $650 per week (an annual salary of approximately $33,800).   In comparison, when he was a non-exempt, hourly employee, Plaintiff was paid an hourly rate of $10.00 - 11.50 per hour (a weekly salary of $400 – $460 and an annual salary of approximately $20,800 - $23,920).   Moreover, the non-exempt, hourly dispatchers Plaintiff supervised were paid an hourly rate between $11.00 and $13.00 per hour, or between approximately $22,880 and $27,040 annually.  (Reinhard Aff. ¶ 12)  This comparison reveals that Plaintiff earned nearly between approximately $6,760 (20%) and $10,920 (32%) more than the next highest paid employee.  This dramatic disparity in pay reflects that Plaintiff was expected to do more than simply engage in routine work that generally could have been performed by others at modest hourly rates.  Rather, Plaintiff's compensation evidences that he had much more responsibility than he would now lead this Court to believe he had during his employment with KTSC.  In sum, Plaintiff's earnings differential dictates a finding that his primary duty was management.  <u>See</u> <u>Baldwin</u>, 7 WH Cases2d at 456, <u>Kastor</u>, 131 F. Supp. 2d at 869, and <u>Haines</u>, 3 WH Cases2d at 879.  Because the regulatory factors clearly establish that Plaintiff's primary duty was management within the meaning of the regulations, Plaintiff was

exempt by virtue of the executive exemption for the period he was employed as a Night Dispatch

Manager, and Defendant is entitled to summary judgment as a matter of law on this issue.


## POINT III

### PLAINTIFF REPORTED AND WAS COMPENSATED FOR ALL HOURS HE WORKED IN EXCESS OF 40 HOURS WHEN HE WORKED AS A NON-EXEMPT DISPATCHER_____

Plaintiff was paid as a non-exempt, hourly employee during his employment as a

Dispatcher (as opposed to Dispatch Manager).  (Pl. Dep. at 45:15-46:11)  Plaintiff claims he

worked more than 40 hours every week of his employment as a non-exempt employee, but his

hours over 40 are not reflected on his time cards pursuant to some unwritten Company policy.

Specifically, Plaintiff claims that he and all of his co-workers who worked more than 40 hours in

a workweek were instructed not to punch more than 40 hours on their time cards and to hand

write their overtime hours on a sticky post-it note.  (Id. at 20:22-21:5; 22:19-26:4)  Plaintiff

further claims that the employees would then be paid cash at a straight time rate for the hours

they worked overtime.  (Id. at 26:5-17; 33:2-34:10)  Finally, when asked during his deposition if

none of his time cards will show he worked more than 40 hours in a workweek, Plaintiff testified

that none of his time cards prior to July 17, 2007 will reflect more than 40 hours worked in a

workweek.  Plaintiff added that after a memorandum regarding time cards was circulated on July

17, 2007, employees were allowed to reflect all time worked on their time sheets and were paid

overtime compensation at a rate of one and one half times their hourly rate.  (Id. at 34:8-10; 92:3-

25; 93:6-11).   The undisputed evidence, including documents produced by Plaintiff,

demonstrates that Plaintiff's allegations are false and that he cannot prove these claims as a

matter of law.

**1.    Paystubs produced by Plaintiff demonstrate Plaintiff was paid overtime compensation at a rate of one and one-half times his hourly rate prior to July 17, 2007____**

On November 2, 2007, Plaintiff produced his KTSC paystubs to Defendants' counsel, which Plaintiff contends support his claims in this case.  Several of the paystubs produced by Plaintiff reveal that Plaintiff was, in fact, paid overtime compensation at a rate of one and one-half times his hourly rate during the period he worked as a non-exempt, hourly employee.  (See Reinhard Aff. ¶ 7 and Exh. "A" thereto).   Plaintiff's paystub for the pay period of May 28, 2007 through June 3, 2007 indicates that Plaintiff worked 15 minutes of overtime that week.  Id.  As he was earning $16.25 per hour at that time, he was paid overtime compensation in the amount of $6.10.  Id.  Plaintiff also produced a pay stub for the pay period of June 4, 2007 through June 10, 2007, which indicates that Plaintiff worked 4 hours and 45 minutes of overtime that week.  The paystub reveals that Plaintiff was paid overtime compensation in the amount of $115.81 that pay period.  Id.   Notably, Plaintiff reported these overtime hours and was paid overtime compensation at one and one-half times his hourly rate prior to the distribution of the July 17, 2007 memorandum, contrary to his allegations.

**2.    Plaintiff's time cards prior to July 17, 2007 demonstrate Plaintiff reported his overtime hours to KTSC_____**

Plaintiff's time cards reveal that, contrary to his claims, Plaintiff did report his overtime hours to KTSC on his time cards either by hand or by using the Company's punch clock − not on a sticky post-it note.  (See Reinhard Aff. ¶¶ 8-9 and Exh. "B" thereto).  For example, for the period of May 7, 2007 through May 13, 2007, Plaintiff's time card and time punches reflect Plaintiff worked 41.25 hours that week.  (Id.)  Additionally, Plaintiff's time cards and time punches for the pay periods of June 4, 2007 through June 10, 2007 and May 28, 2007 through June 3, 2007 reflect Plaintiff worked 44.75 hours and 40.25 hours those weeks,

respectively.  (Id.)  Plaintiff's time card for the pay period June 11, 2007 through June 17, 2007 reflects he worked 44.50 hours that week.  (Id.)  Moreover, Plaintiff's time card for the pay period July 2, 2007 through July 8, 2007 reflects Plaintiff worked 45 hours that week.  (Id.) Finally, Plaintiff's time card for the pay period August 13, 2007 through August 19, 2007 reflects Plaintiff worked 43 hours that week.  (Id.)

These verified records demonstrate that Plaintiff's claim of a Company policy prohibiting employees from punching more than 40 hours on their time cards is false.

### 3.     Plaintiff's co-workers' time cards prior to July 17, 2007 demonstrate that KTSC employees reported their overtime hours to KTSC

Plaintiff's co-workers' time cards and paystubs reveal that they reported their overtime hours to KTSC on their time cards and they were paid overtime compensation at a rate of one and one-half times their hourly rate, prior and subsequent to July 17, 2007.  (See Reinhard Aff. ¶ 9 and Exh. "C" thereto).   Thus, Plaintiff has no facts or evidence to support any of his claims regarding a Company policy prohibiting employees from reporting overtime hours or that KTSC only paid straight time for overtime hours, in cash, prior to July 17, 2007.  Accordingly, Plaintiff's claims fail as a matter of law, and Defendants' Motion for Summary Judgment should be granted.

### CONCLUSION

Based on the foregoing, Defendants, KEY TRANSPORTATION SERVICE CORP. and ORLIE JEDWAB, respectfully request that this Honorable Court enter an Order granting summary judgment in their favor, in addition to such other and further relief as this Court deems just and proper.

CASE NO. 07-22591-CIV-HUCK/SIMONTON

Dated:  January 22, 2008
       Miami, Florida

Respectfully submitted,

By: s/Patrick G. DeBlasio, III
Patrick G. DeBlasio, III, Esq.
Florida Bar No.: 871737
E-mail:  *deblasip@jacksonlewis.com*
Jennifer A. Schwartz, Esq.
Florida Bar No.: 502431
E-mail: *schwart@jacksonlewis.com*
JACKSON LEWIS LLP
One Biscayne Tower – Suite 3500
Two South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that on January 22, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Jennifer A. Schwartz
Jennifer A. Schwartz, Esq.

CASE NO. 07-22591-CIV-HUCK/SIMONTON

## SERVICE LIST

**ABILIO ALVAREZ v. KEY TRANSPORTATION
SERVICE CORP. and ORLIE JEDWAB
CASE NO. 07-22591-CIV-HUCK-SIMONTON**

Chad E. Levy
Fla.Bar No.:  0851701
E-mail:  *chad@levylevylaw.com*
The Law Offices of Levy & Levy, P.A.
300 S.E. 13 Street
Ft. Lauderdale, FL 33316
Telephone:  (954) 763-5722
Facsimile:  (954) 763-5723
Attorneys for Plaintiff

Patrick G. DeBlasio, III, Esq.
Florida Bar No.:  871737
E-mail:  *deblasip@jacksonlewis.com*
Ryan T. Hollander, Esq.
Florida Bar No.:  27926
E-mail: *hollandr@jacksonlewis.com*
JACKSON LEWIS LLP
One Biscayne Tower – Suite 3500
Two South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
Attorneys for Defendants